Today, before we start our oral arguments, I have the distinct pleasure of moving for admissions to the Federal Circuit, my three law clerks. And for that purpose, when I make the motion, Judge Lynn will take over the gavel. The three applicants in movement are Mary Joy Valentine, David Price, and Jeffrey Shee. Formally, I move the admission of Mary Joy Cox Valentine, who is a member of the Bar in good standing of the highest court of California, and David Price, who is a member of the Bar in good standing of the highest court of California, and Jeffrey Shee, who is a member of the Bar in good standing of the highest court of Massachusetts, which means that they've passed the Bar exam and are in good standing. I have knowledge of their credentials. They've worked with me for the past nine months, and I'm satisfied that they possess the necessary qualifications to be great members of this Bar, so I move their admission. Having duly considered your motions, Judge Garris, I'm pleased to grant all three motions. Welcome, and at this point, I would ask that you address the clerk for the oath of office. Please raise your right hand. Do you swear or affirm that you will report yourself, an attorney and counselor of this court, outrightly and according to the law, and that you will support the Constitution of the United States of America? I do. Thank you. Congratulations, and welcome to the Bar of the United States Court of Appeals. We welcome you and look forward to seeing you at the lectern in the near future. Very near future. Thank you. Thank you, Mr. Overley. This morning, we have four cases on the docket, three of which will be argued and one submitted on the record. For purposes of the record, the submitted case is 075073, Haig v. the U.S. First case on oral argument is International Rectifier v. Samsung, docket number 061585. Mr. Cook, I notice that you have reserved eight minutes for your rebuttal time. That's true. And that will be limited to issues raised on the appellee's oral argument. Is that correct? That's correct. Are you ready? Are you familiar with the light system in this court? I am. Very good. Proceed. Probably the most important point to emphasize in this case is the degree of risk and the degree of success that were achieved by ISIS and Samsung in this matter. The Supreme Court in the Hensley case has established that the degree of success is a crucial factor in deciding, and the degree of risk are crucial factors in deciding the appropriateness of the training fees. You know, on that point, I was a little puzzled by the reliance on Hensley simply because Hensley involved the Civil Rights Statute in 1988. And those are one-way fee-shifting statutes. And here, we've not got a federal statute at all. It's a contract. So I just, I mean, maybe right at the end of the day, but I was sort of puzzled by your reliance on Hensley, wondered if there were any California cases that sort of apply that principle to situations such as the contract here. Yes, the McGinnis case is a Ninth Circuit case cited on page five of our brief for the same proposition. And there, that was a private employee discrimination case where Mr. McGinnis had been fired. He had cancer and was fired because he couldn't perform his duties. The court found, the district court found punitive damages of $200,000. Did that case implicate a federal statute under a fee-shifting federal statute? It must have, presumably did, no? I'm pretty sure it was 1988, section 1988. That's, which is what Hensley implicated. Yes. Yeah, my question is why we should apply those principles in a case such as this, which is not predicated on federal statutes such as 1988. But on your contractual agreement, right? Yes. It certainly is a matter of common sense that if there is a tremendous amount at risk in a lawsuit and if the time available to mount a defense is short, then the amount of resources that are applied and dedicated to that task certainly are reasonably going to be larger than they might be in other circumstances. Here, the important thing to remember is that there were nearly $100 million worth of exposure to Samsung and Iksys. There is no guarantee that Iksys could pay that kind of damages. But it wasn't just the monetary exposure. There was also the possibility of Iksys and Samsung being rejoined out of their respective businesses. Iksys half of its MOSFET business, Samsung out of its foundry business. Moreover, the injunction was being construed to have extraterritorial reach. If the decision was upheld, then Samsung's activities in Korea could have been implicated. And finally, the party's reputations were at serious risk. Iksys was on its way to trial in front of a jury on the infringement case on these very patents. And the fact that it might have been found guilty of contempt would have been a very damaging fact if it were permitted in jury trial. Samsung, by the same token, has its own reputation at stake. So there was a tremendous amount at stake. And the amount of money that was spent by both sides, each less than $2 million, something on the order of a million and a half, not only for the district court proceedings, but also for going up on the appearance of patents. Well, you're asking that we order the district court to grant the petition in full? I think that that would be reasonably right. Okay. Well, how would that – I mean, there are certain fees, which I don't think – there are certain judgments by Judge Real that I'm not sure you took issue with necessarily, like his discarding fees for file management expenses and press release. So I'm a little – you would have us award attorney's fees for those items, even though I don't think you've specifically challenged his assertion in that regard. You're talking about the Samsung award. We're the judge. You're right. Some of those we did not take issue with because they were relatively small and the page limits were such as they were. But if you look at the overall context of that, of his award, the items that we found the most problematic were the things that were, as a direct result, incurred because of the amount of risk and the short time available. You're right. We did not challenge in this appeal. So you wouldn't – you don't really mean in full. You mean in full minus perhaps some of the things that you didn't challenge and that he argued were not right. But I will make a point on that, and that is that the parties agreed. These are sophisticated consumers of legal services. They agreed that they would – the prevailing party would receive it as attorney fees. They didn't say reasonable attorney's fees. They could have. They didn't. They didn't say attorney's fees billed and paid, which they could have, but they didn't. This is a contract. The question whether they meant attorney fees billed and paid or reasonable attorney fees, as that clause is typically construed by the courts, is unknown. And we cited a case – I should say IR cited a case in its brief, the Marin case, which – I forget what page. And it says, well, the contract is susceptible to two different interpretations. The courts give it such a construction as to make it lawful, operative, definite, reasonable, and capable of being construed, carried into effect, if it can be done without violating the intention of the parties. Here the whole purpose of this reasonable – of this attorney fee clause was to eliminate spurious litigation, discourage spurious litigation. Repeated disputes over what's reasonable. We talked in the Fed hearing. This is the second time we've done this appeal. It is not productive for either parties. It's reasonable to assume that what they were really interested in is minimizing that, eliminating it. Mr. Cook, in that regard, you know, this case is a little frustrating in the sense that here we are, the second time addressing this question of attorney fees. And normally those things are resolved with relatively little debate. And my first question is, has there been any effort on the part of the parties to settle this? Yes, there has. And have those settlement efforts – are they productive in any way? Or have you come to a complete loggerhead? One of the difficulties is that the settlements have always been omnibus settlements. So the attorney fee clause gets swept in with the merits of the infringement case. And that case is a little bit less fine than this one. I understand. I'm also a little frustrated in the sense that on the one hand, it seems to me that Judge Rios' actions were quite arbitrary. On the other hand, he was a little bit more specific this time around, at least with respect to Samsung, and did identify a number of things that – several of which, as Judge Prost pointed out, you haven't even challenged. And in your reply, I noticed in the appendix, whatever response you filed in the district court to those specific itemized issues with respect to Samsung, your reply in the appendix consisted of the first page and the signature page and nothing in between. So we're left without the argument. So it seems to me on the one hand, we've got an action that had some thinking anyway, some thought, some consideration. And on the other hand, actions that seem to be totally arbitrary, and we're faced with this dilemma. How are we to resolve that? I think it could be resolved by simply saying that what the parties intended, construing the contract between them with the consent of the attorney fees, just the amount of attorney fees billed and paid. That sort of a construction of this clause is eminently reasonable. Well, under the California Code, of course, there is a reasonableness factor that has to be taken into consideration. And that's why I'm saying this would be very reasonable. The reason is that if the losing party simply pays what was billed and paid, that party may end up paying 100% of whatever was attributable to the issue. But overall, it would end up paying less than it would after protracted appeals and district court proceedings. By the same token, the prevailing party, even though it might receive less overall, but it would lose less. Because in this case, as this case goes on and on, and there's a certain portion of attorney fees that won't be paid, that eventually is going to eclipse a substantial portion of the benefit of that clause in the first place. So it's a very reasonable interpretation. I have one question relating to your request that we remove Judge Riel from the remand, if we remand the case. Yes. According to the records, at least, there is another appeal that was docketed yesterday by ICSIS on the patent infringement matter. That's right. That case is still pending before Judge Riel. That's correct. What happens if we agree with you and remand it for another judge assignment? That case, first of all, we have not asked for that, for the infringement case, to be assigned to a different judge in this matter. That's not on the table here. That matter also is concluded in the district court and is only up here on appeal. The matter of the appeal that was docketed yesterday is simply a request to modify the injunction to permit ICSIS to deliver product to a medical products company for life-saving purposes. It's a very small modification of the injunction. As far as we know, that's the last thing Judge Riel is having, or will have any contact with, is denying that motion and we brought it up to this court. So the other case is up here directly on appeal. Correct. All right, Mr. Cook, you've used up a substantial portion of your time. We will restore two minutes for your rebuttal. Ms. Morgan. Good morning. I'm Nancy Morgan. I'm representing Appley International Rectifier Corporation. With me is Glenn Trost. And I'd like to start by addressing Judge Prost's first question regarding the application of Hensley outside the civil rights context. We agree with Judge Prost. We believe that this case is governed by California contract law and Ninth Circuit law. And all of the cases that ICSIS cites all involve civil rights plaintiffs where the degree of success was an issue for the prevailing plaintiff. And we've cited a dozen or so contract cases where they don't get into the success portion as much. ICSIS's success is already accounted for by the fact that they are the prevailing party. And Hensley started with first you find a reasonable fee. And then once you've got a reasonable fee, you may apportion it with regard to the success that a plaintiff has achieved. In this case, Judge Real has already determined a reasonable fee. And that's the starting point for this court's analysis. But shouldn't a judge be able to explain specifically on what basis the reasonableness analysis stands? If you take a look at the order, he certainly didn't do that for ICSIS's fee request. He may have done some for Sampson, but not for ICSIS. So how do we justify his particular basis of reasonableness? Well, for starters, Judge Real has been on the bench for 40 years. He's in the best position. He's allowed to rely on his experience as to what's reasonable and what is not reasonable. Yeah, but he appears to have viewed ICSIS as having been purely and solely an intervener. And you agree that's not correct, right? We do not agree that Judge Real has regarded ICSIS solely as an intervener because he's awarded them much more fees. They've covered up more than half a million dollars in fees, and they didn't incur those fees solely as an intervener. He found as an intervener they contributed in one regard, that they conceived the double recovery argument, and he awarded them—his award covers the fees that they spent for that argument. Well, he says that as for ICSIS, its only significant role was producing a central argument to reduce Sampson's contempt sanction. That's certainly not correct. Well, Judge Real found that as an intervener, that was their contribution, that they contributed the double recovery argument. So the fee should be limited to the intervention? We believe the fee should be affirmed that it's reasonable. It covers fees beyond the intervention. But how do we know what the basis Judge Real's rationale stands on? For ICSIS, there is only two short paragraphs and two sentences, basically. One, he speaks about their significant role in the central argument Judge Lynn pointed to, and the second paragraph contends it spends 48,000 fees opposing IR's cert petition, and he disallows it. Read in full, we believe that the findings made in the initial part of the order would apply to the ICSIS award as well. But that applies to Sampson. Well, he does say that the issues in the case from the beginning were few, and this was a case that had two issues. Were Sampson an ICSIS in contempt, and if so, what should the fine be? So that covers the entire case, not just Sampson. Where did the number $301,125.17 come from? That was his award. Where did that come from? Judge Real said it came after a consideration of all the factors. He evaluated the novelty and the difficulty of the case, whether there was a risk involved, how difficult it was. And then he picked a number. He picked a number. From where? Just a nice, not even a round number. Well, the question now is whether that number can be affirmed. And if you look to the cases— Whether his actions are arbitrary or whether he's abused his discretion in making this fee reduction. And what should we look to to assess whether his actions were arbitrary or reasonable? This court should look to see whether it can affirm the award based on the record. The record shows— But do we have to dig the record up and take a look at all of the bills and statements that were submitted and determine whether or not they were considered by the lower court when he has no reference to the record specifically that he relied upon? This court does not need to do that because Judge Real has already done that. All this court needs— Where is it in his order? Where is it? Where does he point to it? He claims that he reviewed 400 pages of statements. Yes, Your Honor. But he doesn't point to any of the specificity in the statements as to how he arrives at the $301,000. Under the law of the Ninth Circuit, he's not required to cite the specificity. He's required to issue a reasonable fee award. How do we know it's reasonable? Would $250,000 be reasonable? Would $500,000 be reasonable? What's the measure? What is the metric that we have to measure against? Well, to start, you should measure it against our fees. Our fees were less than half of what they recovered. That by itself should be reasonable. You didn't have $96 million at risk and a finding of contempt. It's one thing to be on the offensive side, and it's another to be on the defensive. That is correct, Your Honor. But we asked Judge Real to award them nothing. They asked Judge Real to award them everything. He awarded them a number between what we asked and what they asked. And they did recover more than double our fees. Well, you can't start from nothing. I mean, you entered into a contract that said that in connection with any enforcement action, the loser pays attorney's fees. What did that mean when you entered into that contract? Those issues were briefed in the prior appeal. So at this point, IR accepts that Samsung and ISIS are the prevailing parties based on this Court's prior order. And there's a contractual agreement to shift fees. So you don't start from zero. It seems to me you start with the fees that were actually billed and paid and then work from there and look at whether those fees were reasonable or not reasonable. And the question is, why wasn't that done in this case? Or perhaps I should restate it. The question to me is, was it done in this case? And it doesn't look like it was. Judge Real said he considered all the factors. He looked at their bills. He applied a method for calculating those fees that's been approved by the Ninth Circuit. But how do we know that? How do we know that he applied all of the elements required by the Ninth Circuit? The order says that he did. He says he considered all the factors. And Judge Real is not required to specify each factor. This Court's precedent don't require that. And ISIS's cases, our cases, he's not required to spell it out. He's required to come up with a reasonable fee. But with a basis and understanding to be able to defend that as a reasonable fee. He can't just pluck a number out of the air and say, this is reasonable based on my 50 years of legal experience. Judge Real evaluated. He presided over the action. He heard all the evidence. He's reviewed the bills. He did not take ISIS's and Samsung's requests as reasonable. And that is not an abuse of discretion. They had 49 timekeepers on this appeal. I mean, excuse me, on this case. A two-issue case, 49 lawyers, or 49 timekeepers, 29 of whom were lawyers. They billed over $3 million for a case that had no discovery, one two-day hearing. And there are months where nothing happened.  That's not an abuse of discretion. Well, what is reasonable about denying fees when you apply for cert? You apply for a cert petition and they opposed it. They spent $48,000 in opposing that cert petition. Judge Real said that they said it had no authority. Why should we cover those additional fees and denied them, obviously. Is that a reasonable basis of denial? ISIS did not brief the issue for the judge. He's entitled to not award fees when they don't brief the issue. Brief it? Yes. What do you mean by briefing it? They did not provide the court any legal authority why they should recover the cert petition fees. Well, with legal fees that they expended in opposing your cert petition, what more do they need to prove? Except the fact that they opposed your cert petition. Judge Real asked them for a case law on why fees in opposing a cert petition would be recoverable, and they did not give him any. That's why he denied the cert fees. But if you have an agreement which states specifically that the loser pays legal fees, and when you lose, you file a petition for cert, isn't that all part of the same basis of objecting to the legal fees at that point in time when you pursue it to the final degree? Isn't that part of the same case? It is part of the same case, but the question is what's a reasonable fee? They did not brief the cert issue to the court, and they're not entitled to recover everything. They raised the issue with the court. They may not have had any support, any legal support for it, but it's still part of the same legal case that's going forward. I mean, if you had not filed a cert petition, they wouldn't have had to oppose it. So they wouldn't have incurred any legal fees to oppose the petition. We did not oppose their request to be paid their fees for cert. But the judge denied it. The judge denied it. On what basis? Is there a reasonable basis? We don't know, do we? The court from the Northern District in California in Omni said it was reasonable to not award fees when the party does not provide legal authority explaining why those fees should be recovered. They also asked to cover their fees for press releases. Well, what legal authority was necessary? There was no debate. There was a contractual undertaking here for fee shifting, and certainly there is a debate about the reasonableness of the fees. That's what we've been talking about. But legal fees in an enforcement action are legal fees in an enforcement action, and if that action includes in part a petition for certiorari to the Supreme Court, why is that any different than an appeal to this court or any of the proceedings at the district court? What legal authority is necessary? And what legal authority was it that Judge Real was calling for? It's not reasonableness. He was calling for some authority as to why an attorney fee claim extends to an appeal to the Supreme Court. Well, that's been an issue that courts have decided, so it has been briefed in some courts, just not this one. Well, it seems to me, if anything, it was your obligation to cite some authority as to why that's not part of the legal fee in this case. We didn't oppose it, Your Honor. If Judge Real had awarded them their cert petition fees, we would not have opposed that. But when a party has a contract, that does not mean that all fees are recoverable. The law permits a reasonable attorney's fee. And Mr. Cook brought up that there was a contract and that under dependents' arguments, whenever there's a contract, all the fees get paid, as opposed to a reasonable fee. And we've cited case after case where the parties had contracts, Diamond, Mustachioed, Melnick, and the fees were reduced 28%, 70%, 50%. In the Diamond, which is the Ninth Circuit case involving a contract, the prevailing party got $807. And the Court of Appeals said, well, we're going to affirm this. That's not an abuse of discretion. The standard for an abuse of discretion is whether the award is clearly wrong. In this case, given the simplicity of the case and the amount of people ISIS and Samsung had on it, and they were working jointly together, this is not an unreasonable award. I mean, they've recovered over $1,200,000. That's not unreasonable. That's a very reasonable award. And ISIS does not cite any cases to the contrary. Do the current factors apply here under the Ninth Circuit? The Ninth Circuit, the current factors, and the California factors are pretty much the same. So they would apply in this particular case. We have no objection to application of the current factors. Thank you. Thank you. Judge Lind, do you have any more questions? Thank you. Mr. Cook, you have five minutes. Let's see if I can run through my points. First of all, Ms. Morgan mentioned the word apportionment and said that that was really what Judge Reid was doing. This is not an apportionment case. The Franklin Mint case is an apportionment. The Tudor case is an apportionment. These were cases where not all of the claims were subject to an attorney-fee award. Here, all of the claims are subject to an attorney-fee award. There's no question of that. The question is only the reasonableness issue. If you accept the analysis of what attorney-fee means, that's not an apportionment issue. Here, there was 100% success on all claims in the case, and therefore, the apportionment rule doesn't apply. Next point. 49 timekeepers. If you look through the bills, you'll see that there is four or five main attorneys for each side, Samsung and ISIS. These were 49 timekeepers. The amount of time spent by other people was small. The principal attorneys on this were a core group of attorneys. Also, the point that Judge Reil applied his independent judgment to come up with the Samsung or the ISIS award, if you look at the objections that IR filed and map it to Judge Reil's award, he simply went through and recited what their objections were. Some of them didn't make any sense at all. For example, one of the entries was too much. IR objected that it was too much for Samsung to have spent $100,000 opposing the contempt motion. That, if you add up the numbers of all the things that he recited in his award and in their objections, what he's done instead of adopting a reasonable value for what they should have spent on the opposition, he simply deducted the whole 100%. So his Samsung award shows the opposite of an independent, reasonable evaluation of the evidence. He simply parroted back what the objections said. And that $100,000 issue, that's typical. It appears in other entries where the objection goes to the total amount, and he appears to eliminate the entire amount rather than accepting, coming up with something not too reasonable. If we go through the entire analysis that he did do on Samsung, is there a way to calculate how he came up with a $650,000 figure? I don't think so. They seem, their total objections seem close to, but it was within $150,000. I mean, that's horseshoes. That's not even, I wouldn't score it horseshoes. That was the number that he came up the first time, the last time he had a contract. I don't remember. But the point on the Samsung thing is that if he had been specific, if you look at, like, Judge Posner's attorney fee award for the Seventh Circuit, he was sitting in the Seventh Circuit and actually made an attorney fee award. He said, enough's enough. And he made the award. But you can see there, he went through specifics and he made specific deductions. Judgment, he really didn't explain his deductions. He didn't come up with a calculation at all. And Ms. Morgan says, well, that isn't necessary. I don't see how you can review his decision if he hasn't made some connection between the numbers. I mean, I think even his Samsung work, it's got numbers in it. Still, it's unreviewable. And that's our objection to it. Mr. Cook, did you object to the order that was submitted by the other attorneys, by IR's attorneys to the judge, this being the final order? I'm sure when they submitted the draft, they sent you a copy of it. Yeah. Did you object to it? The central district rules only permit you to object to form, not to substance. And the form, the rules of form are spelled out in the local rules. It's a separate number of paragraphs. They're very limited. You don't have an opportunity to object on the merits. Well, I notice that the paragraphs are not numbered specifically. I suppose we should object to the absence of number. Only the final aspects do it. And the final order itself still contains the attorney's signature. Is that normal in the central circuit, in the central district? No, it is not. Did you object to that? I believe we did. We typically have made formal objections. Thank you. Thank you. Thank you. Case is submitted.